IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DOMINGO P. RICASA, | ) | CIV. NO. 18-00033 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII DEPARTMENT OF | ) | |
| HUMAN SERVICES; PANKAJ BHANOT, | ) | |
| in his official capacity as | ) | |
| Director, State Of Hawaii, | ) | |
| Department Of Human Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS STATE OF HAWAII DEPARTMENT OF HUMAN SERVICES AND PANKAJ BHANOT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31)**

Plaintiff Domingo P. Ricasa filed a Complaint against his former employer, the State of Hawaii Department of Human Services and Pankaj Bhanot, in his official capacity as Director of the State of Hawaii, Department of Human Services.

Plaintiff began employment with the State of Hawaii Department of Human Services as a Youth Corrections Officer in 2000.

In 2015, Plaintiff sustained work injuries and was absent from work. Defendants searched for alternative positions that Plaintiff could perform based on his physical limitations following his injuries. Defendants reassigned Plaintiff from his work as a Youth Corrections Officer to a another position with the State of Hawaii Department of Human Services.

1

Plaintiff filed a Complaint in this Court asserting disability, sex, and age discrimination claims. Plaintiff seeks both monetary damages and injunctive relief.

Defendants seek summary judgment on each of Plaintiff's claims.

Defendants argue that Plaintiff's claims pursuant to the Americans With Disabilities Act and the Age Discrimination in Employment Act are barred by the Eleventh Amendment to the United States Constitution.

Defendants assert that Plaintiff's claims for sex discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 are barred by both the statute of limitations and exhaustion requirements.

Defendants argue that even if Plaintiff's claims are not barred by State sovereign immunity, statute of limitations, and exhaustion, Plaintiff is unable to establish a prima facie claim of discrimination or retaliation for any of his claims.

Defendant State of Hawaii Department of Human Services and Pankaj Bhanot's Motion for Summary Judgment (ECF No. 31) is **GRANTED**.

## PROCEDURAL HISTORY

On January 19, 2018, Plaintiff filed a Complaint. (ECF No. 1).

On March 1, 2018, Plaintiff filed a FIRST AMENDED COMPLAINT. (ECF No. 6).

On June 19, 2019, Defendants filed a MOTION FOR SUMMARY JUDGMENT (ECF No. 31) and a CONCISE STATEMENT OF FACTS. (ECF No. 32).

On June 24, 2019, the Court issued a briefing schedule and required Plaintiff to file his Opposition by July 15, 2019. (ECF No. 39).

On July 12, 2019, Plaintiff requested a one-week extension to file his Opposition until July 22, 2019. (ECF No. 41).

On July 15, 2019, the Court granted Plaintiff's request for an extension of time to file his Opposition. (ECF No. 40).

On July 22, 2019, Plaintiff filed his OPPOSITION (ECF No. 43) and CONCISE STATEMENT IN OPPOSITION. (ECF No. 44).

On August 7, 2019, Defendants filed their REPLY. (ECF No. 46).

On September 4, 2019, the Court held a hearing on Defendants' Motion for Summary Judgment (ECF No. 31).

## BACKGROUND

In September 2000, Plaintiff began employment with the Defendant State of Hawaii Department of Human Services as a Youth Correctional Officer. (Declaration of Plaintiff Domingo Ricasa ("Pla.'s Decl.") at ¶ 3, attached to Pla.'s Concise Statement of Facts ("CSF"), ECF No. 44-1).

**Plaintiff's First Work Injury In July 2012**

On July 2, 2012, Plaintiff incurred a work injury to his

back and knees.  (Pla.'s Decl. at ¶ 5, ECF No. 44-1).  More than
two years later, on November 17, 2014, Plaintiff returned to work
after he had been cleared to return to work without restrictions.
(Id. at ¶ 7).

**Plaintiff's Complaint Against Co-Workers On January 8, 2015**

Plaintiff claims that on January 8, 2015, he was
discriminated against by co-workers.  (State of Hawaii
Administrative Investigations Decision, written by Investigator
Hal Fitchett, re: January 8, 2015 incident, attached as Ex. 4 to
Def.'s CSF, ECF No. 33-1).  Plaintiff reported that on January 8,
2015, he made two radio calls to other Youth Corrections Officers
to assist him with moving a ward in the facility.  Plaintiff
asserts that the other Youth Corrections Officers ignored his
calls and that his supervisors did not assist him or discipline
the other officers who ignored his calls.  (Id. at p. 4).
Plaintiff filed a complaint on the same date, because he believed
his co-workers intentionally did not answer his radio calls.
(Id.)  He also believed that his co-workers were laughing at him.
(Id. at p. 22, ECF No. 34-1).

Defendant State of Hawaii Department of Human Services
conducted an investigation into Plaintiff's claims regarding the
January 8, 2015 incident.  It determined that there was
insufficient evidence to support Plaintiff's allegations.  (Id.
at pp. 21-22, ECF No. 34-1; Hashimoto Decl. at ¶ 6, ECF No. 32-
1).

**Plaintiff's Second Work Injury Occurred On January 8, 2015**

On January 8, 2015, Plaintiff incurred a back injury. (State of Hawaii, Supervisor's Accident Report, attached as Ex. 1 to Def.'s CSF, ECF No. 32-3).  Plaintiff's supervisor, Mitchell Simao, completed an accident report that indicated Plaintiff had similar injuries in 2000, 2001, 2004, 2005, 2007, 2008, 2009, 2010, 2011, 2012, and 2013.  (Id.)

Plaintiff was absent from work from January 9, 2015, through March 1, 2015, due to his injuries sustained on January 8, 2015. (Declaration of Brenna Hashimoto ("Hashimoto Decl.), Human Resources Officer for the Department of Human Services, at ¶ 6, ECF No. 32-1).

A decision by the Hawaii State Department of Labor and Industrial Relations, Disability Compensation Division, determined that Plaintiff suffered headaches and a back strain caused by his job duties, which included opening doors, answering phones, and using radios.  (State of Hawaii, Disability Compensation Decision, dated August 26, 2015, attached as Ex. 2 to Def.'s CSF, ECF No. 32-4).

On February 27, 2015, Plaintiff's physician, Dr. Joseph DiCostanzo, M.D., evaluated Plaintiff and deemed him able to return to work at full capacity on March 2, 2015.  (Plaintiff's Industrial Work Status Report completed by Dr. Joseph DiCostanzo, dated February 27, 2015, attached as Ex. 3 to Def.'s CSF, ECF No. 32-5).

**Plaintiff's Return To Work And The March 23, 2015 Investigation Into Plaintiff's Conduct**

Plaintiff returned to work on March 2, 2015.

On March 23, 2015, Plaintiff was notified by his supervisor, Mitchell Simao, that Plaintiff was subject of an investigation. The investigation was for allegations that Plaintiff had used his personal cell phone to take photographs of staff, wards, and the facility grounds. (State of Hawaii Administrative Investigation Report, written by Investigator John Cavaco, dated September 22, 2016, at p. 2, attached as Ex. 5 to Def.'s CSF, ECF No. 35-1).

**Plaintiff's Third Work Injury In June 2015**

Less than three months later, on June 14, 2015, Plaintiff suffered another work injury. (Work Injury Report dated June 14, 2015, attached as Ex. 6 to Def.'s CSF, ECF No. 36-1). A physical altercation occurred between two wards. When Plaintiff attempted to control the wards, he fell to the floor and injured his knees and elbow. (Work Injury Report dated June 14, 2015, at p. 3, attached as Ex. 6 to Def.'s CSF, ECF No. 36-1).

Plaintiff was absent from work for approximately six weeks. Plaintiff's physician, Dr. Joseph DiCostanzo, M.D., evaluated Plaintiff and deemed him able to return to work at full capacity on July 30, 2015. (Plaintiff's Industrial Work Status Report completed by Dr. Joseph DiCostanzo, dated July 30, 2015, attached as Ex. 8 to Def.'s CSF, ECF No. 36-3). Plaintiff returned to work on August 3, 2015, and he worked until September 23, 2015.

**Plaintiff's September 11, 2015 Complaint Against A Co-Worker**

On September 11, 2015, Plaintiff made a complaint against a fellow Youth Corrections Officer.  (Letter dated April 27, 2016 from the Defendant State of Hawaii Department of Human Services to Plaintiff Re: September 10, 2015 Complaint, attached as Ex. 9 to Def.'s CSF, ECF No. 36-4).

Plaintiff alleged that Officer Koehler engaged in workplace violence and threatened Plaintiff, while they were on duty together on September 10, 2015.  (Id.)

The Defendant State of Hawaii Department of Human Services conducted an investigation and found that "video graphic evidence of the alleged work place violence incident does not corroborate [Plaintiff Ricasa's] account of the events as report by [Ricasa] in [his] complaintant statement dated September 11, 2015."  (Id. at p. 2).  The investigation also found that witness statements did not corroborate Plaintiff's account.  (Id.)

**Plaintiff's September 29, 2015 Complaint Of Discrimination**

Less than three weeks later, on September 29, 2015, Plaintiff filed another complaint.  Plaintiff reported that he believed he had been sexually harassed six months earlier on March 24 and 25, 2015, and April 1, 2015.

Plaintiff's September 29, 2015 complaint alleged that following the notice that he was under investigation for taking pictures on his personal cell phone, male wards made inappropriate verbal comments and unwelcome sexual and physical

contact with Plaintiff.  (Pla.'s Decl. at ¶ 20, ECF No. 44-1).

 Plaintiff believed that the wards were "being manipulated to be involved to participate in an unfounded allegation of taking pictures of them."  (State of Hawaii Administrative Investigation Report, written by Investigator John Cavaco, dated September 22, 2016, at p. 3, attached as Ex. 5 to Def.'s CSF, ECF No. 35-1).  Plaintiff reported that he believed the male wards verbally and physically harassed him due to the allegations that Plaintiff Ricasa had taken their pictures.  (Pla.'s Decl. at ¶ 9, ECF No. 44-1).

Plaintiff asserts that he reported the wards' behavior to his direct supervisor Mitchell Simao, Youth Facility Administrator Mark Patterson, and his second-level supervisor Cynthia Hubbell.  (Pla.'s Decl. at ¶ 20, ECF No. 44-1). Plaintiff claims that nothing was done to prevent the wards from harassing him.  (Pla.'s Decl. at ¶¶ 20-22, ECF No. 44-1).

Defendant State of Hawaii Department of Human Services conducted an investigation into Plaintiff's September 29, 2015 complaint of sexual harassment and retaliation.  (State of Hawaii Administrative Investigation Report, written by Investigator John Cavaco, dated September 22, 2016, attached as Ex. 5 to Def.'s CSF, ECF No. 35-1).  Investigator John Cavaco concluded that there was no evidence to support Plaintiff's allegations of discrimination, harassment, and retaliation.  (State of Hawaii Administrative Investigation Report, written by Investigator John

Cavaco, dated September 22, 2016, at p. 19, attached as Ex. 5 to
Def.'s CSF, ECF No. 35-1).

**Plaintiff Referred To The Defendants' Return To Work Priority
Program**

Plaintiff ceased working on September 23, 2015, and for the
remainder of the year, claiming that he began to suffer residual
effects from his previous knee and back injuries. (Hashimoto
Decl. at ¶ 10, ECF No. 32-1). Plaintiff received workers'
compensation and was found to be temporarily disabled from
September 23, 2015 through March 27, 2016. (State of Hawaii,
Disability Compensation Decision, dated December 21, 2018,
attached as Ex. 7 to Def.'s CSF, ECF No. 36-2).

In late 2015, Defendant State of Hawaii Department of Human
Services referred Plaintiff to its Return To Work Priority
Program. (Declaration of Jennifer Mori-Kilbey ("Mori-Kilbey
Decl."), State of Hawaii Return to Work Program Specialist at ¶
6, ECF No. 32-2). The Return To Work Priority Program offers
assistance to Hawaii state employees who have suffered from work
injuries. (Id. at ¶ 2). The Program consults with the
employee's treating physician to determine whether an employee
can return to work in his position with or without
accommodations. (Id.) If a determination is made that no
accommodation is available, the Program engages with the employee
to assist the employee to find an alternative State position.
(Id. at ¶¶ 3-5).

**Plaintiff's First Functional Capacity Evaluation In January 2016**

On January 21, 2016, Plaintiff underwent a Functional Capacity Evaluation by his treating physician Dr. Joseph DiCostanzo. (January 21, 2016 Evaluation by Dynamic Evaluation Center, at pp. 1-4, attached as Ex. 10, ECF No. 36-5).

On February 12, 2016, Dr. DiCostanzo opined that, based on the evaluation, Plaintiff could not perform the duties of a Youth Corrections Officer. (Letter from Dr. DiCostanzo to Ms. Mori-Kilbey dated February 12, 2016, attached as Ex. 11 to Def.'s CSF, ECF No. 36-6).

**Plaintiff Assigned To Temporary, Light Work Duty In March 2016**

Dr. DiCostanzo's February 12, 2016 evaluation determined that Plaintiff could perform temporary, light work duty. The evaluation found that Plaintiff could not work as a full-time, full duty Youth Corrections Officer. (Letter from Dr. DiCostanzo to Ms. Mori-Kilbey dated February 12, 2016, attached as Ex. 11 to Def.'s CSF, ECF No. 36-6).

Based on this finding, Defendant State of Hawaii Department of Human Services provided Plaintiff with a temporary, light duty assignment with the Division of Vocational Rehabilitation beginning on March 28, 2016, until Plaintiff, once again, went on medical leave in April 2016. (Letter from Defendant State of Hawaii Department of Human Services to Plaintiff, dated March 22, 2016, at p. 2, attached as Ex. 17, ECF No. 36-12).

Plaintiff performed a second temporary, light duty

assignment from September 1, 2016 until October 31, 2016.  He
performed a third, temporary, light duty assignment from November
26, 2016 to December 30, 2016.  (Light Duty Report at p. 4,
attached as Ex. 18 to Def.'s CSF, ECF No. 36-13).

**Plaintiff's Second Functional Capacity Evaluation In November 2016**

On November 28, 2016, Plaintiff underwent a second
Functional Capacity Evaluation by his treating physician Dr.
Joseph DiCostanzo.  (November 28, 2016 Evaluation by Dynamic
Evaluation Center, at pp. 2-6, attached as Ex. 20, ECF No. 36-
15).

Dr. DiCostanzo opined that Plaintiff could not perform the
duties of a Youth Corrections Officer and no accommodation could
enable him to do so.  (Letter from Dr. DiCostanzo to Ms. Mori-
Kilbey dated December 12, 2016, at pp. 2-3, attached as Ex. 22 to
Def.'s CSF, ECF No. 37-2).

Plaintiff continued to suffer residual effects from his knee
and back injuries.  He was deemed to be temporarily disabled by
the State of Hawaii Department of Labor and Industrial Relations,
Disability Compensation Division, from January 1, 2017 through
September 5, 2017.  (State of Hawaii, Disability Compensation
Decision, dated December 24, 2018, at p. 2, attached as Ex. 7 to
Def.'s CSF, ECF No. 36-2).

**Defendants' 2017 Search For An Alternative Position For Plaintiff**

While Plaintiff remained on workers' compensation disability

leave, on June 28, 2017, Defendants' Return To Work Priority
Program proceeded to search for an alternative state position in
which Plaintiff could work based on his treating physician's
opinion that he could no longer work as a Youth Corrections
Officer with or without accommodation.  (Letter to Plaintiff from
the Return To Work Priority Program, dated June 28, 2017,
attached as Ex. 24 to Def.'s CSF, ECF No. 37-4).

**Plaintiff's July 19, 2017 Charge Of Discrimination**

On July 19, 2017, Plaintiff filed a Charge of Discrimination
With the United States Equal Employment Opportunity Commission.
(July 19, 2017 EEOC Charge of Discrimination, attached as Ex. 32
to Def.'s CSF, ECF No. 37-12).

Plaintiff indicated that he was discriminated against due to
his sex, age, disability, and in retaliation.  (<u>Id.</u>)

**Defendants' Identification Of A New, Permanent Position For
Plaintiff To Begin In September 2017**

On August 28, 2017, State of Hawaii Return To Work Priority
Program identified a vacant Eligibility Work I position that
Plaintiff could perform.  The position is in the Benefits,
Employment and Support Services Division of the Defendant State
of Hawaii Department of Human Services.  (Letter from Defendant
Department of Human Services to Plaintiff, dated August 28, 2017,
attached as Ex. 31 to Def.'s CSF, ECF No. 37-11).

Plaintiff's treating physician, Dr. DiConstanzo, cleared
Plaintiff for the Eligibility Worker position.  (<u>Id.</u>)  Plaintiff

was instructed to report to his new position on September 6, 2017.  (Id.)

The record is silent as to whether Plaintiff returned to work.

**October 17, 2017 EEOC Right To Sue Letter**

On October 16, 2017, the United States Equal Employment Opportunity Commission issued a right to sue letter to Plaintiff. (October 16, 2017 Right to Sue Letter, attached as Ex. A to Pla.'s First Amended Complaint, ECF No. 6-2).

Three months later, on January 19, 2018, Plaintiff filed his Complaint in this Court.  (Complaint, ECF No. 1).

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery,

and matters judicially noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>,
477 U.S. at 324.  The opposing party cannot, however, stand on
its pleadings or simply assert that it will be able to discredit
the movant's evidence at trial. Fed. R. Civ. P. 56(e); <u>T.W. Elec.
Serv.</u>, 809 F.2d at 630.  The opposing party cannot rest on mere
allegations or denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v.
Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir.
1994).  When the non-moving party relies only on its own
affidavits to oppose summary judgment, it cannot rely on
conclusory allegations unsupported by factual data to create an
issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138
(9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle
Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

Plaintiff's First Amended Complaint asserts claims for
employment discrimination and unlawful retaliation against both
Defendant State of Hawaii Department of Human Services and
Defendant Pankaj Bhanot, in his official capacity as Director of
the State of Hawaii Department of Human Services.

Plaintiff's First Amended Complaint asserts a variety of
claims seeking monetary and injunctive relief.  These claims can
be categorized as seeking redress for three alleged bases of
discrimination:

(1) **Disability discrimination and retaliation** in violation
    of Title I and Title V of the Americans With

15

Disabilities Act, 42 U.S.C. § 12112 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

(2) **Sex discrimination, hostile work environment, and retaliation** in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and,

(3) **Age discrimination and retaliation** in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623.

Defendants move for summary judgment on all of Plaintiff's claims.

First, Defendants seek summary judgment on the basis that Plaintiff's Americans With Disabilities Act ("ADA") and Age Discrimination in Employment Act ("ADEA") claims are barred by State sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution.

Second, Defendants argue that Plaintiff's Title VII sex discrimination claims are not exhausted and are barred by the statute of limitations.

Third, Defendants assert that even if the claims are not otherwise barred, all of Plaintiff's claims fail on the merits as a matter of law.

The Court will first address State sovereign immunity.

## I.    Eleventh Amendment To The United States Constitution

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Pursuant to the Eleventh Amendment, a state has sovereign immunity from lawsuits for monetary damages or other retrospective relief brought in federal court by its own citizens or citizens of other states. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-06 (1984).

Federal court actions against state agencies or instrumentalities are also barred by the Eleventh Amendment sovereign immunity. Sato v. Orange Cty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017). The Eleventh Amendment also provides sovereign immunity to a state official sued in his or her official capacity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

Sovereign immunity pursuant to the Eleventh Amendment is not absolute. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). There are three exceptions to the general rule that states are immune from suits brought by private citizens in federal court. Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 817 (9th Cir. 2001), amended by 271 F.3d 910.

First, a state may waive its Eleventh Amendment defense. Douglas, 271 F.3d at 817.

Second, under the Ex Parte Young doctrine, the Eleventh Amendment does not bar a suit against a state official when the suit seeks prospective injunctive relief. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996).

Third, Congress may abrogate Eleventh Amendment immunity if it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. Bd. Of Trs. Of Univ. Of Ala v. Garrett, 531 U.S. 356, 363 (2001); Will, 491 U.S. at 66-68.

Plaintiff has asserted each of his ADA and ADEA claims against both the Defendant State of Hawaii Department of Human Services and against the Pankaj Bhanot, in his official capacity as Director of the State of Hawaii, Department of Human Services.

The Eleventh Amendment to the United States Constitution is applied differently when suit is filed against a state official acting in his official capacity than when it is filed against the State or a State agency directly.

First, the Court will address the application of the Eleventh Amendment to the ADA and ADEA claims asserted against the State agency itself.

Second, the Court will address the application of the Eleventh Amendment to the ADA and ADEA claims as they are asserted against the individual State agency director in his official capacity.

## A. Plaintiff's ADA And ADEA Claims Against The Defendant State Agency Are Barred

The Eleventh Amendment protects any state agency that is an arm of the state government from suits brought directly against it in federal court. Pennhurst State Sch. & Hosp., 465 U.S. at

123-24.

Plaintiff's claims against the State of Hawaii Department of Human Services are construed as alleged against the State of Hawaii itself because the Department of Human Services is an arm of the Hawaii state government. Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1989); California v. Campbell, 138 F.3d 784, 786 (9th Cir. 1998).

Plaintiff asserts claims against the State agency pursuant to both Title I and Title V of the Americans With Disabilities Act and the Age Discrimination in Employment Act.[1]

The State of Hawaii has not waived its Eleventh Amendment State sovereign immunity for claims filed pursuant to Titles I and V of the ADA and the ADEA. There is no exception to allow Plaintiff to bring these claims against the Defendant State of Hawaii Department of Human Services.

Contrary to Plaintiff's argument, Ex Parte Young does not allow a plaintiff to sue a State agency for injunctive relief. The Eleventh Amendment jurisdictional bar applies to a state agency regardless of the nature of the relief sought. California, 138 F.3d at 786; O'Neill v. Baker, 210 F.3d 41, 47,

---

[1] Title I of the ADA prohibits an employer from discriminating against qualified individuals with disabilities in regard to employment. 42 U.S.C. §§ 12111, 12112. Title V of the ADA prohibits an employer from retaliating against individuals reporting disability discrimination. 42 U.S.C. § 12203.
    The ADEA bars employers from discriminating against its employees because they are older than 40 years of age. 29 U.S.C. § 631.

n.5 (1st Cir. 2000) (explaining that claims for injunctive relief against a state agency that is an arm of the state is barred).

Congress did not abrogate state sovereign immunity pursuant to either Title I or V of the ADA nor to the ADEA. <u>Garrett</u>, 531 U.S. at 360 n.1; <u>Kimel v. Florida Bd. Of Regents</u>, 528 U.S. 62, 82-91 (2000); <u>Demshki v. Monteith</u>, 255 F.3d 986, 988-89 (9th Cir. 2001).

Plaintiff's ADA and ADEA claims against Defendant State of Hawaii Department of Human Services are barred pursuant to State sovereign immunity. <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1040 (9th Cir. 2003) (explaining that a plaintiff may not sue an arm of the state in federal court for either injunctive or monetary relief).

Defendant State Of Hawaii Department of Human Services' Motion for Summary Judgment is **GRANTED**, as follows:

> **As To Defendant State Of Hawaii Department Of Human Services:**
>
> (1)  Plaintiff's Claims Under The Americans With Disabilities Act Are Barred Pursuant To The Eleventh Amendment To The United States Constitution;
>
> (2)  Plaintiff's Claims Under The Age Discrimination In Employment Act Are Barred Pursuant To The Eleventh Amendment To The United States Constitution.

Next, the Court turns to the ADA and ADEA claims as they are asserted against the director of the Defendant State agency.

> **B.    The Eleventh Amendment Limits Plaintiff's ADA And ADEA Claims Against Defendant Pankaj Bhanot**

The Eleventh Amendment does not prohibit suits for

prospective declaratory and injunctive relief against state officials, sued in their official capacities, to enjoin an alleged ongoing violation of federal law. Aqua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000).

Plaintiff's ADA and ADEA claims against Defendant Bhanot in his official capacity are limited to injunctive relief for prospective harm.

> **1. Plaintiff's ADA And ADEA Claims Against The State Agency Director Seeking Monetary Relief Are Barred Pursuant To The Eleventh Amendment**

The Eleventh Amendment bars private suits seeking money damages against a state actor for violations of Title I or Title V of the ADA or the ADEA. Douglas, 271 F.3d at 917; Demshki, 255 F.3d at 988-89; Ahlmeyer v. Nevada Sys. Of Higher Educ., 555 F.3d 1051, 1060 (9th Cir. 2009).

Plaintiff's claims seeking monetary relief against Defendant Bhanot pursuant to the ADEA and the ADA are barred pursuant to State sovereign immunity.[2]

---

[2] Defendant Bhanot is sued only in his official capacity as Director of the State of Hawaii Department of Human Services. There are no claims asserted against Defendant Bhanot in his individual capacity. Even if he was sued in his individual capacity, there is no individual liability pursuant to the ADA or the ADEA. Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993); Walsh v. Nev. Dept. Of Human Res., 471 F.3d 1033, 1037-38 (9th Cir. 2006).

**2. Plaintiff's ADA And ADEA Claims Against The State Agency Director Seeking Retrospective Relief Are Barred Pursuant To The Eleventh Amendment**

A plaintiff's blanket request for injunctive relief is not enough to avoid dismissal as an exception to Eleventh Amendment immunity. <u>Han v. U.S. Dep't of Justice</u>, 45 F.3d 333, 338 (9th Cir. 1995). Plaintiff must demonstrate that the relief he seeks is properly characterized as prospective. <u>Miranda B. v. Kitzhaber</u>, 328 F.3d 1181, 1189 (9th Cir. 2003). A plaintiff may not seek a retroactive award which requires the payment of funds from the state treasury. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677-78 (1974).

Here, the record does not claim that Plaintiff is still employed by the State of Hawaii. Claims against a state official in his official capacity can only proceed if they seek to enjoin an ongoing violation, not a past violation. <u>Papasan v. Allain</u>, 478 U.S. 265, 277-78 (1986).

Plaintiff's ADA and ADEA claims appear to seek relief for past retaliation and past discrimination. To the extent Plaintiff's ADA and ADEA claims seek to remedies for past violations, not on-going violations, Plaintiff's claims seeking retrospective relief are barred by the Eleventh Amendment to the United States Constitution. <u>See</u> <u>Motoyama v. Hawaii Dept. Of Transp.</u>, 584 Fed. Appx. 399, 400 (9th Cir. 2014) (finding that sovereign immunity barred the plaintiff's claims for past violations of the ADA and finding the district court properly

granted summary judgment on plaintiff's claims for prospective injunctive relief where there was no specific or substantial evidence to support her claims of future harm).

Defendant Pankaj Bhanot, in his official capacity as Director, State Of Hawaii, Department of Human Services' Motion for Summary Judgment is **GRANTED**, as follows:

> **As To Defendant Pankaj Bhanot, in his official capacity as Director, State Of Hawaii, Department Of Human Services:**
>
> (1) Plaintiff's Claim For Monetary Damages Under The ADA Is Barred Pursuant To The Eleventh Amendment To The United States Constitution;
>
> (2) Plaintiff's Claim For Monetary Damages Under The ADEA Is Barred Pursuant To The Eleventh Amendment To The United States Constitution;
>
> (3) Plaintiff's Claims For Retrospective Relief Under The ADA And The ADEA Are Barred Pursuant To The Eleventh Amendment To The United States Constitution.

## II. Plaintiff's Remaining Disability Discrimination Claims

The Parties agree that Plaintiff's claim for disability discrimination pursuant to the Rehabilitation Act is not barred by State sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution.

The Court next evaluates the merits of Plaintiff's Rehabilitation Act claim as well as his remaining ADA claims seeking prospective injunctive relief against Defendant Bhanot.

The Ninth Circuit Court of Appeals has explained that the same standard applies for analyzing Plaintiff's claims pursuant

to the Rehabilitation Act and Title I of the ADA.[3]  <u>Fleming v. Yuma Reg'l Med. Ctr.</u>, 587 F.3d 938, 939 (9th Cir. 2009).

Plaintiff claims that the Defendants failed to provide reasonable accommodations for his disabilities in violation of the Rehabilitation Act and Title I of the ADA.  To state a prima facie case for failure to accommodate a disability, a plaintiff must show:

(1)  he is disabled;

(2)  he is a qualified individual who can perform the essential functions of his job either with or without reasonable accommodations; and,

(3)  he suffered an adverse employment action because of his disability.

<u>Samper v. Providence St. Vincent Med. Ctr.</u>, 675 F.3d 1233, 1237 (9th Cir. 2012).

## A.    Disabled

Plaintiff asserts that Defendants failed to accommodate his disability following his work injuries that he sustained on June 14, 2015, during a fight between wards.  (Work Injury Report

---

[3] Title I of the ADA, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).
  The Rehabilitation Act provides that no "otherwise qualified individual with a disability" shall "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination...."  29 U.S.C. § 794(a).

dated June 14, 2015, attached as Ex. 6 to Def.'s CSF, ECF No. 36-1).

As a result of the incident, Plaintiff was found to have suffered 10% permanent partial disability of the right leg for the right knee and 15% permanent partial disability of the left leg for the left knee. (State of Hawaii Disability Compensation Division Decision dated December 21, 2018, attached as Ex. 7 to Def.'s CSF, ECF No. 36-2).

For purposes of the Motion, the Court assumes that Plaintiff was disabled following his injuries on June 14, 2015. (Work Injury Report dated June 14, 2015, attached as Ex. 6 to Def.'s CSF, ECF No. 36-1).

Plaintiff is unable to establish a prima facie case, however, because he cannot demonstrate that he was a qualified individual who was able to perform the essential functions of the Youth Corrections Officer position with or without a reasonable accommodation following his June 2015 injuries.

## B.    Otherwise Qualified Individual

To determine if an individual is qualified for a position, the Court examines if the individual satisfied the requisite skill, experience, education, and other job-related requirements of the position. The Court then considers if the individual can perform the essential functions with or without a reasonable accommodation. <u>Bates v. United Parcel Svc, Inc.</u>, 511 F.3d 974,

990-91 (9th Cir. 2007) (en banc).  The employer has the burden of establishing the essential functions of the position.  Id.

### 1.   Essential Functions

Here, Defendants have produced the Job Description, Job Profile, and Job Analysis for a State of Hawaii Youth Corrections Officer.  (Job Description attached as Ex. 10 at pp. 5-10; Job Profile attached as Ex. 10 at pp. 11-12; Job Analysis attached as Ex. 10 at pp. 13-15, ECF No. 36-5).  The documents indicate that a Youth Corrections Officer maintains the care, custody, and control of juvenile wards in a youth correctional setting and performs security duties.  (Ex. 10 at p. 5, ECF No. 36-5).  The Job Description sets forth the following physical requirements: "use handcuffs and leg chains; lock and unlock doors; close gates rapidly in emergencies; perform searches...restrain/subdue wards; break up fights; carry wards to seclusion room or other locations; walk and stand prolonged hours; and work double shift...chase and apprehend escaping wards and participate in manhunts."  (Job Description at p. 9, ECF No. 36-5).

The Job Analysis states that the following physical abilities are required on an occasional to frequent basis: pushing, pulling, lifting, carrying, sitting, running, stair climbing, bending, squatting, kneeling, stooping, crouching, forward reaching, twisting, side bending, overheard reach, grasping, handling, and fingering, with standing and walking in a

frequent to constant basis. (Job Analysis at p. 15, ECF No. 36-5). It states that weight of inmates can vary from 120 lbs. to 260 lbs. (Id. at pp. 13-14). The Job Analysis also explains that an inmate "may demonstrate aggressive and/or assaultive behaviors towards one another or towards the YCO. The YCO must be able to pull inmates apart during fights and/or protect themselves if assaulted." (Id. at p. 15).

Plaintiff has not provided any evidence to dispute the essential elements of the position set forth in the Job Description, Job Profile, and Job Analysis.

The record conclusively establishes that Plaintiff was unable to perform the essential functions of the Youth Corrections Officer following his June 14, 2015 injuries.

Plaintiff was evaluated by his own treating physician Dr. Joseph DiCostanzo. On February 12, 2016, Dr. DiCostanzo determined that Plaintiff would not be able to perform the duties and responsibilities of a Youth Corrections Officer on a permanent, full-time, full duty basis. (February 12, 2016 evaluation, attached as Ex. 11 to Def.'s CSF, ECF No. 36-6). On the same date, Dr. DiConstanzo determined that no possible modification or accommodation would enable Plaintiff to work as a Youth Corrections Officer on a permanent, full-time, full duty basis. (Id.)

Ten months later, on December 12, 2016, Dr. DiConstanzo again determined that Plaintiff would not be able to perform the

duties of a Youth Corrections Officer and that no accommodation would allow him to return to the position. (December 12, 2016 evaluation, attached as Ex. 22 to Def.'s CSF, ECF No. 37-2).

Plaintiff "continues to suffer residual effects from the injury" and experiences pain, stiffness, diminished balance, weakness, and coordination problems following the injury. (State of Hawaii Disability Compensation Division Decision dated December 21, 2018, at p. 2, attached as Ex. 7 to Def.'s CSF, ECF No. 36-2). Plaintiff suffered a permanent partial disability to each of his knees. (Id.)

Plaintiff does not dispute that his injuries caused him to be unable to perform the essential functions of the Youth Corrections Officer position. Rather, Plaintiff claims that he should have been offered a permanent light-work position as a Youth Corrections Officer.

Plaintiff's request is not a reasonable accommodation.

## 2. Reasonable Accommodation

A reasonable accommodation is defined as modifications to the work environment, or to the manner under which the position is performed, that enable an individual to perform the essential functions of that position. 29 C.F.R. § 1630.2(o)(1)(ii). The employee bears the burden of showing that the accommodation is reasonable and it would have enabled him to perform the essential functions of the position. Dark v. Curry Cnty., 451 F.3d 1078,

1088 (9th Cir. 2006).

Plaintiff claims that he was provided with temporary light duty assignments, including one in the Central Control, which he claims was within the same line of work as a Youth Corrections Officer. Plaintiff asserts that he should have been offered a permanent light duty position in the Central Control. (Pla.'s Opp. at pp. 10, 13, ECF No. 43).

Plaintiff ignores the requirement that the reasonable accommodation must allow the Plaintiff to perform the essential functions of the position. Dark, 451 F.3d at 1088. Plaintiff admits that he became unable to perform the essential functions of a Youth Corrections Officer. The essential functions of the position include numerous physical requirements that Plaintiff could not perform with or without reasonable accommodations, including restraining and subduing wards, breaking up fights, carrying wards to seclusion rooms, walking and standing prolonged hours, and chasing and apprehending escaping wards. (Job Description at Ex. 10 p. 9, ECF No. 36-5). Plaintiff's own physician determined that he could not perform the essential functions of the position in December 2016. (Dr. DiCostanzo's December 12, 2016 evaluation, attached as Ex. 22 to Def.'s CSF, ECF No. 37-2). There was no reasonable accommodation that would allow Plaintiff to perform the essential functions of the Youth Corrections Officer position. Reza v. Int'l Game Tech., 351 Fed. Appx. 188, 190 (9th Cir. 2009).

Plaintiff has not demonstrated that the accommodation he requested, to work a permanent light duty position in Central Control, is reasonable.  Contrary to Plaintiff's argument, an employer is not obligated to provide an employee the exact accommodation he requests or prefers, the employer need only provide some reasonable accommodation.  Zivkovic v. So. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); see US Airways, Inc. v. Barnett, 535 U.S. 391, 406 (2002).

Here, Defendants provided Plaintiff with temporary light duty positions in March and April 2016, and September-December 2016, while it searched for permanent positions that Plaintiff could perform.  (Letter from Defendant State of Hawaii Department of Human Services to Plaintiff, dated March 22, 2016, at p. 2, attached as Ex. 17, ECF No. 36-12; Light Duty Report at p. 4, attached as Ex. 18 to Def.'s CSF, ECF No. 36-13).

On August 28, 2017, State of Hawaii Return To Work Priority Program identified a vacant Eligibility Work I position that Plaintiff could perform in the Benefits, Employment and Support Services Division of the Defendant State of Hawaii Department of Human Services.  (Letter from Defendant Department of Human Services to Plaintiff, dated August 28, 2017, attached as Ex. 31 to Def.'s CSF, ECF No. 37-11).  Plaintiff's treating physician, Dr. DiConstanzo, cleared Plaintiff for the Eligibility Worker position.  (Id.)  Plaintiff was instructed to report to his new position on September 6, 2017.  (Id.)

Defendants identified a reasonable accommodation for the Plaintiff in finding him a new position that he could perform in the Benefits, Employment and Support Services Division. Defendants were under no obligation to create a new position to accommodate Plaintiff. Wellington v. Lyon Cty. Sch. Dist., 187 F.3d 1150, 1155 (9th Cir. 1999).

An employer has an obligation to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations for an employee's disability. Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001). Defendants did so. The offer of reassignment to a permanent position in the Benefits, Employment and Support Services Division constituted a reasonable accommodation.

The fact that Defendants allowed Plaintiff to work in temporary, light duty positions does not demonstrate that a permanent position in Plaintiff's desired field was a reasonable accommodation. The employer is not required to create a permanent light duty position at the employee's request. It also need not convert a temporary, light duty position into a permanent one for purposes of accommodation an employee's request. Pasatiempo v. England, 125 Fed. Appx. 794, 796 (9th Cir. 2005); Sharpe v. Henderson, 2001 WL 34039485, *11-*13 (D. Or. Oct. 19, 2001); see Lopez v. Unisource Worldwide, Inc., 2007 WL 4259587, *6 (N.D. Cal. Dec. 4, 2007) (explaining that under both California and federal employment law, an employer is under

no duty to make a temporary, light-duty position permanent to accommodate an employee's disability).

Defendants' Motion for Summary Judgment as to Plaintiff's claims for disability discrimination pursuant to the Rehabilitation Act and Title I of the ADA is **GRANTED**.

## III. Retaliation Claims

The Court next turns to Plaintiff's retaliation claims. Plaintiff asserts he was retaliated against in 2017 when he was informed he could no longer work as a full-time, full-duty Youth Correctional Officer.  Plaintiff claims it was retaliation for complaining of workplace conditions in 2015.

The same standard applies for analyzing a retaliation claim under either the Rehabilitation Act, Title V of the ADA, Title VII of the Civil Rights Act of 1964, or the ADEA.

Absent direct evidence of retaliation, the court must apply the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) burden-shifting framework.  Yonemoto v. McDonald, 114 F.Supp.3d 1067, 1109 (D. Haw. 2015).

To establish a prima facie retaliation claim, Plaintiff must show:

(1)  involvement in a protected activity;

(2)  an adverse employment action; and,

(3)  a causal link between the two.

Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 887

(9th Cir. 2004).

Courts have found that the "but-for" causation standard applies to Plaintiff's retaliation claims pursuant to the Rehabilitation Act.  See Smith v. Harrington, 2015 WL 1407292, at *22 (N.D. Cal. Mar. 27, 2015) (collecting cases and applying Nassar "but-for" standard to the ADA and the Rehabilitation Act); T.B ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 473 (9th Cir. 2015) (finding that the but-for causation standard from Title VII applies to retaliation claims brought pursuant to both Titles I and II of the Americans With Disabilities Act).

Under the "but-for" causation standard, a plaintiff must show that the causal link between the injury and wrong is so close that the injury would not have occurred "but-for" the act. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2528 (2013).  Plaintiff must show that the retaliation for the protected conduct was the only reason for the employer's adverse action.  A plaintiff cannot prevail if the evidence shows that an employer had other, lawful motives that were causative of the employer's decision.  Kilroy v. Los Angeles Unified Sch. Dist. Bd. of Educ., 2016 WL 5662042, *7 (C.D. Cal. Aug. 18, 2016).

Here, Plaintiff cannot establish but-for causation for his retaliation claims.  The record demonstrates that Plaintiff made complaints to his employer in February and September 2015 about conditions of his workplace. (State of Hawaii Administrative

33

Investigations Decision, written by Investigator Hal Fitchett, dated February 5, 2015, attached as Ex. 4 to Def.'s CSF, ECF No. 33-1; Letter dated April 27, 2016 from the Defendant State of Hawaii Department of Human Services to Plaintiff Re: September 10, 2015 Complaint, attached as Ex. 9 to Def.'s CSF, ECF No. 36-4; State of Hawaii Administrative Investigation Report, written by Investigator John Cavaco, dated September 22, 2016, at p. 3, attached as Ex. 5 to Def.'s CSF, ECF No. 35-1).

Plaintiff claims he suffered an adverse employment activity in June 2017, when Defendants informed him he would not be able to return to the Youth Corrections Officer position and would be reassigned to another division. (Letter to Plaintiff from the Return To Work Priority Program, dated June 28, 2017, attached as Ex. 24 to Def.'s CSF, ECF No. 37-4).

Defendants' June 28, 2017 letter to Plaintiff explained that he was being referred to its Return To Work Priority Program based on the December 12, 2016 physical evaluation from Plaintiff's treating physician. The evaluation opined that Plaintiff was unable to work as a Youth Corrections Officer with or without accommodations. (Id.)

There is no temporal inference of causation as the letter was sent more than a year and a half after Plaintiff filed his complaints in February and September 2015. Villarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002).

The letter explaining Defendants' non-retaliatory grounds

for Plaintiff's reassignment demonstrates that Plaintiff "simply cannot satisfy a but-for standard of causation." Brenneise, 806 F.3d at 473. Defendants have provided evidence of a legitimate, non-discriminatory reason for Plaintiff's reassignment based on his own doctor's determination that Plaintiff could not perform the duties of a Youth Corrections Officer. Plaintiff has not put forward any evidence that but-for his complaints in February and September of 2015, he would not have been reassigned to another position in 2017.

Plaintiff's First Amended Complaint asserts retaliation claims pursuant to the Rehabilitation Act, and also pursuant to the ADA, Title VII, and the ADEA.

The Court has ruled in Section I. of this Order that the statutory basis for Plaintiff's retaliation claims are limited based on State sovereign immunity.

To the extent Plaintiff's retaliation claims are not barred by State sovereign immunity, Plaintiff has failed to establish a retaliation claim pursuant to the ADA or the ADEA. Plaintiff has not established a prima facie claim for retaliation. Brooks v. Capistrano Unified Sch. Dist., 1 F.Supp.3d 1029, 1037 (C.D. Cal. 2014) (standard for retaliation under the ADA and the Rehabilitation Act are identical); Yonemoto, 114 F.Supp.3d at 1110-11.

In addition, as explained in Section IV. of this Order, to the extent Plaintiff's claims under Title VII of the Civil Rights

Act of 1964 are not otherwise barred by the statute of limitations or exhaustion, Plaintiff's retaliation claim pursuant to Title VII fails for lack of but-for causation.  <u>Fleming v. IASIS Healthcare Corp.</u>, 151 F.Supp.3d 1043, 1053-54 (D. Ariz. 2015) (explaining that the standards for retaliation under Title VII, the ADEA, and the ADA are identical).

Defendants' Motion for Summary Judgment as to Plaintiff's claims for retaliation is **GRANTED**.


## IV.  <u>Sex Discrimination And Hostile Work Environment Claims</u>

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e <u>et</u> <u>seq</u>.

Plaintiff claims that he was discriminated against and was subjected to a hostile work environment on the basis of his sex.

As to his hostile work environment claim, Plaintiff asserts that in March and April of 2015, wards that he was in charge of supervising, sexually and verbally harassed him.  (Pla.'s Decl. at ¶ 20, ECF No. 44-1). (State of Hawaii Administrative Investigation Report, written by Investigator John Cavaco, dated September 22, 2016, at p. 3, attached as Ex. 5 to Def.'s CSF, ECF No. 35-1).  Plaintiff claims that he reported the sexual harassment to his supervisors in 2015 but alleges they did nothing to assist him.  (Pla.'s Decl. at ¶¶ 27, 29, ECF No. 44-1).

As to his sex discrimination claim premised on disparate
treatment, Plaintiff claims that female employees were treated
more favorably than he was.  Specifically, Plaintiff claims that
in September 2015, he was refused a light duty assignment, but
two female employees were provided a temporary, light duty
assignment during the same time period.  (Pla.'s Decl. at ¶¶ 10,
12, ECF No. 44-1).

## A.   Untimely Charge Of Discrimination

Title VII of the Civil Rights Act of 1964 requires that a
"charge shall be filed by or on behalf of the person aggrieved
within three hundred days after the alleged unlawful employment
practice occurred."  42 U.S.C. § 2000e-5(e)(1).  The 300-day
limitations period is applicable in this case because Title VII
extends the 180-day period to 300 days if filed in a worksharing
jurisdiction such as Hawaii.  EEOC v. Global Horizons, Inc., 904
F.Supp.2d 1074, 1090 n.2 (D. Haw. 2012).

The acts that Plaintiff alleges support his sex
discrimination and hostile work environment claims occurred
between March and September 2015.  Plaintiff did not file his
Charge of Discrimination asserting claims of sex discrimination
and hostile work environment with the Equal Employment
Opportunity Office until more than 657 days later, on July 19,
2017.  (EEOC Charge of Discrimination, attached as Ex. 32 to
Def.'s CSF, ECF No. 37-12).

Plaintiff's sex discrimination and hostile work environment claims are untimely. All of the facts that Plaintiff asserts to support his Title VII claim occurred prior to 2016. Plaintiff signed his Charge of Discrimination on July 17, 2017, and it was received on July 19, 2017, well after the 300 day deadline for Plaintiff to administratively exhaust his Title VII claims. Lyons v. England, 307 F.3d 1092, 1103 (9th Cir. 2002).

### B. Equitable Tolling Is Not Applicable

Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit in federal court, but it is a requirement, like a statute of limitations, that is subject to waiver, estoppel, or equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

Plaintiff requests equitable tolling because he claims that he attempted to file a Charge of Discrimination with the Hawaii Civil Rights Commission in 2015. Plaintiff never signed nor filed a Charge of Discrimination with the Hawaii Civil Rights Commission. (Unfiled Charge of Discrimination, attached as Ex. P to Pla.'s CSF, ECF No. 44-17). Plaintiff claims he did not understand the procedures with the Hawaii Civil Rights Commission. (Pla.'s Decl. at ¶ 38, ECF No. 44-1).

Equitable tolling is to be applied sparingly and courts have been generally unforgiving when a late filing is on account of a claimant's failure to exercise due diligence. Irwin v. Dep't of

<u>Veterans Affairs</u>, 498 U.S. 89, 96 (1990).  Plaintiff provides no evidence except his self-serving declaration that he did not understand the procedures and that he believed he "was going to receive a call for an interview and [he thought] someone would review [his charge of discrimination] with [him] over the phone prior to signing and returning [it]."  (Pla.'s Decl. at ¶ 38, ECF No. 44-1).

Equitable tolling is warranted only "when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."  <u>Stoll v. Runyon</u>, 165 F.3d 1238, 1242 (9th Cir. 1999).  Equitable tolling does not apply based on Plaintiff's own inaction or misunderstanding of the filing procedures.

### C.   Prima Facie Case

Even if timely and exhausted, Plaintiff has failed to provide evidence to support a prima facie case for sex discrimination or hostile work environment.

### 1.   Sex Discrimination

It is unlawful for an employer to discriminate against any individual because of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  Under the <u>McDonnell Douglas</u> framework, to establish a sex discrimination claim, Plaintiff must demonstrate:

(1)  that he belongs to a protected class;

(2) he was a qualified individual;

(3) he suffered an adverse employment action; and,

(4) similarly situated individuals outside of his protected class were treated more favorably.

Hawn v. Exec. Jet Mgmt., 615 F.3d 1151, 1156 (9th Cir. 2010). Alternatively, Plaintiff may produce evidence of direct discrimination. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004).

Plaintiff has not provided any evidence of direct discrimination. Plaintiff alleges that in September 2015, he was not provided with a temporary, light duty assignment that he requested. Plaintiff asserts that two female employees were provided temporary, light duty assignments. He claims that those female employees were similarly situated to him.

In order to show that the employees allegedly receiving more favorable treatment are similarly situated, the individual seeking relief must demonstrate, at the least, that he is similarly situated to those employees in all material respects. Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). Plaintiff's conclusory statement in his own declaration that the employees were similarly situated is insufficient to meet his burden. Villarimo, 281 F.3d at 1061.

Plaintiff has provided no evidence that the female employees he claims were treated more favorably were similarly situated to him. Kaiser v. Trace, Inc., 72 F.Supp.3d 1126, 1134 (D. Idaho 2014); Grosz v. The Boeing Co., 455 F.Supp.2d 1033, 1040-41 (C.D.

Cal. 2006).

Defendants provided evidence that the two female employees were not similarly situated to Plaintiff. The two female employees were restricted in performing full duty positions because of their respective doctors' recommendations as to their temporary, physical limitations. (Declaration of Brenna Hashimoto, Departmental Human Resources Officer for the Department of Human Services, at ¶ 10, attached to Def.'s Reply, ECF No. 46-4). The female workers had medical conditions that restricted them from full-time work in September 2015. One of the women was pregnant and the other had temporary injuries.

Plaintiff did not have limitations similar to the female employees in early September 2015. Plaintiff's personal physician had already cleared Plaintiff to return to full duty without restrictions on July 30, 2015. (Id. at ¶ 7; Plaintiff's Industrial Work Status Report completed by Dr. Joseph DiCostanzo, dated July 30, 2015, attached as Ex. 8 to Def.'s CSF, ECF No. 36-3). Plaintiff returned to work as a full-duty Youth Correctional Officer on August 3, 2015. There was no basis to provide Plaintiff with a light duty position in early September 2015, when Plaintiff was cleared to perform work at full duty, which allowed him to perform all of the essential functions of the Youth Corrections Officer position. Plaintiff has not provided any evidence to rebut the Defendants' reason for not offering him a temporary, light duty position in September 2015.

In 2016, after Plaintiff sustained further injuries, Plaintiff was assigned temporary, light duty positions. Plaintiff was referred to the Defendants' Return to Work Priority Program and Plaintiff was offered a permanent position in the Benefits Division. The decision was based on the determination by Plaintiff's physician in December 2016, that Plaintiff was unable to perform the essential functions of the Youth Corrections Officer position with or without reasonable accommodations. Plaintiff has not provided any basis to demonstrate that the decision by the Defendants to offer him the permanent position in another division was discriminatory and that it was based on sex. There is no evidence that female officers that were similarly situated to Plaintiff were offered permanent light duty positions as Youth Corrections Officers.

Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claims for sex discrimination is **GRANTED.**

### 2.    **Hostile Work Environment**

Discrimination under Title VII encompasses the creation of a hostile work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). A hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

(1993).

Plaintiff must show that he was subjected to verbal or physical conduct of a sexual nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of his employment. Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

The working environment must both be subjectively and objectively perceived as abusive. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). Key factors include the frequency and severity of the conduct. Harris, 510 U.S. at 23. There is no objective evidence in the record to support Plaintiff's claim of a hostile work environment. The only evidence supporting the claim is Plaintiff's own self-serving affidavit. Even considering Plaintiff's own subjective opinion as to what occurred, Plaintiff's hostile work environment claim is limited to three occasions: on March 24, 2015, on March 25, 2015, and April 1, 2015. (Pla.'s Decl. at ¶ 20, ECF No. 44-1).

Plaintiff claims that on those three days, male wards, that he was charged with supervising, harassed him. Plaintiff alleges that his supervisors did not assist him in preventing the harassment by the wards. Plaintiff asserts "the wards would say in a sexual and provocative manner for me to take their picture and tell[] me I look gay. Then during recreation, the wards would say things to me in a sexual tone while in their shorts and make gestures as if pulling down their shorts and exposing

43

themselves to me." (Pla.'s Decl. at ¶ 20, ECF No. 44-1).

Construing the record in a light most favorable to Plaintiff, Plaintiff has not provided sufficient evidence to demonstrate a hostile work environment based on his sex. Plaintiff has not provided evidence of conduct that is so severe and offensive that it would unreasonably interfere with his work performance. Harris, 510 U.S. at 23. While Plaintiff claims he felt threatened, the conduct did not include any physical violence or any direct threats to Plaintiff. The isolated three days of inappropriate conduct by wards does not rise to the level of an objectively pervasive and severe hostile work environment that occurred with such severity and such consistency that it would have affected Plaintiff's ability to perform his job functions. Laulau v. City and Cnty. Of Honolulu, 938 F.Supp.2d 1000, 1016-17 (D. Haw. 2013) (explaining that isolated comments by the plaintiff's supervisor were too sparse to support a claim that the workplace was permeated with hostility).

Plaintiff has failed to demonstrate that the conditions of his employment were similarly severe to the plaintiffs in Freitag v. Ayers Jr., 468 F.3d 528, 539-41 (9th Cir. 2006), where female prison guards were regularly confronted by a pervasive practice of male inmate's masturbating in front of them. The Ninth Circuit Court of Appeals has found a hostile work environment where a plaintiff was subjected to "a relentless campaign of insults" of a sexually explicit and derogatory nature "at least

once a week and often several times a day." <u>Nichols v. Azteca</u>
<u>Restaurant Enterprises, Inc.</u>, 256 F.3d 864, 870 (9th Cir. 2001).
No such facts exist in this case.

In contrast, the Ninth Circuit Court of Appeals found no
hostile work environment when a supervisor made several offensive
sexual remarks directly to a plaintiff and in that plaintiff's
presence, where the plaintiff complained of numerous difficulties
on multiple occasions about the supervisor's conduct, and the
plaintiff received personal letters at her own home from the
supervisor. <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1107 (9th
Cir. 2000). The facts presented by Plaintiff Ricasa are much
more limited and similarly fail to demonstrate a hostile work
environment based on sex.

Defendants' Motion for Summary Judgment as to Plaintiff's
Title VII claims for hostile work environment is **GRANTED**.

## V. Age Discrimination Claims

Plaintiff's final claim alleges age discrimination. As
explained earlier, Plaintiff's claims for age discrimination
pursuant to the ADEA are largely barred pursuant to the State
sovereign immunity. To the extent Plaintiff seeks injunctive
relief for his ADEA claims, Plaintiff must establish disparate
treatment through evidence of direct discrimination or under the
burden-shifting standard of <u>McDonnell Douglas</u>. <u>Coleman v. Quaker</u>
<u>Oats Co.</u>, 232 F.3d 1271, 1281 (9th Cir. 2000).

Plaintiff has not provided any evidence of direct discrimination.

To establish a prima facie case, Plaintiff must establish that:

(1)  he was at least forty years old;

(2)  he was qualified for the position he sought;

(3)  he was denied the position; and,

(4)  the position was given to a substantially younger person.

Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012).

Plaintiff's age discrimination claims are premised on the same facts as his Title VII sex discrimination claims. Specifically, Plaintiff claims that in September 2015, he requested a light duty position and was not provided one. Plaintiff asserts that two female employees under the age of forty were provided temporary, light duty positions. (Pla.'s Decl. at ¶¶ 10, 12, ECF No. 44-1).

Plaintiff has provided no evidence of either his own age or the age of the female employees he cites in his Declaration.  He provides no documentary evidence besides his own Declaration to support his age discrimination claim.  Such evidence is insufficient to defeat summary judgment.  Villiarimo, 281 F.3d at 1061.  Plaintiff has not established that the employees offered light work positions were substantially younger than him.

Even if Plaintiff could establish the ages of the employees, Plaintiff cannot demonstrate that Defendants' proffered

nondiscriminating reason was merely pretextual.

As explained earlier, the female employees were offered temporary light duty positions because they had temporary physical restrictions.  They were not offered the temporary, light duty positions due to their ages, or the age of the Defendant.  (Hashimoto Reply Decl. at ¶ 10, ECF No. 46-44). Specifically, one female employee was pregnant and was offered a temporary light duty position due to her pregnancy.  Another female employee's physician had recommended that she be given temporary, light duties based on a work injury.  (Id.)

Defendants have explained that Plaintiff was not provided a light duty position in early September 2015, because Plaintiff's personal physician determined that Plaintiff did not need a light duty position in September 2015.  Plaintiff was cleared to "return to work at full capacity" and returned to work on August 3, 2015. (Id. at ¶ 7; Plaintiff's Industrial Work Status Report completed by Dr. Joseph DiCostanzo, dated July 30, 2015, attached as Ex. 8 to Def.'s CSF, ECF No. 36-3).

Plaintiff has offered no basis to rebut the Defendants' proffered explanation that the other employees were given temporary, light duty positions due to their doctors' recommendations, not on account of their ages or the age of the Plaintiff.

Plaintiff suffered additional injuries and was no longer able to perform the essential functions of the Youth Corrections

Officer in 2016.  Plaintiff was offered a permanent position in another division.  Plaintiff has not provided any evidence that the decision to offer Plaintiff a permanent position in another division was based on his age.  He also has not demonstrated that younger officers who were similarly situated to Plaintiff were treated more favorably on account of age.

Defendants' Motion for Summary Judgment as to Plaintiff's claims for age discrimination is **GRANTED.**

## CONCLUSION

Defendants State Of Hawaii Department of Human Services and Pankaj Bhanot, in his official capacity as Director Of The State Of Hawaii, Department Of Human Services' Motion for Summary Judgment (ECF No. 31) is **GRANTED.**

There are no remaining claims or parties herein.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

DATED: October 11, 2019, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Domingo P. Ricasa v. State of Hawaii, Department of Human Services; Pankaj Bhanot, in his official capacity as Director, State of Hawaii, Department of Human Services, Civ. No. 18-00033 HG-WRP; **ORDER GRANTING DEFENDANTS STATE OF HAWAII DEPARTMENT OF HUMAN SERVICES AND PANKAJ BHANOT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31)**                    48